This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**NELSON RODARTE,**

Appellant-Respondent,

v.                                                                          **No. A-1-CA-35651**

**STATE OF NEW MEXICO,**
**TAXATION AND REVENUE**
**DEPARTMENT, MOTOR**
**VEHICLE DIVISION,**

Appellee-Petitioner.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Jeff F. McElroy, District Judge**

Nelson Rodarte
Vadito, NM

Pro Se Appellant

Hector H. Balderas, Attorney General
Cordelia Friedman, Special Assistant Attorney General
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**VIGIL, Judge.**

{1} The district court reversed the decision of a hearing officer of the Taxation and Revenue Department, Motor Vehicle Division (MVD) sustaining revocation of the driver's license of Nelson Rodarte (Driver) under the Implied Consent Act. This Court then granted MVD's petition for a writ of certiorari to review the district court's decision. MVD filed its brief in chief, and after we granted Driver three extensions of time to file an answer brief, Driver's counsel filed a motion to withdraw, stating he had "lost contact" with Driver after "numerous attempts." The motion to withdraw was granted, and we subsequently issued an order to Driver to show cause why the case should not be submitted to a panel solely on the brief in chief pursuant to Rule 12-312(B) NMRA. Driver failed to respond, and the matter is before us solely on the basis of the arguments contained in MVD's brief in chief. Because of the unusual posture of the appeal, we decide this case in a memorandum opinion, even though it raises an issue of first impression under the Implied Consent Act.

{2} The issue presented is whether a driver who refuses to submit to a chemical test of his breath for alcohol upon the request of the arresting law enforcement officer, after being advised that refusal will result in revocation of his driver's license for one year, must also be advised that the driver has a right to be given an opportunity to arrange for a chemical test of his own choosing as a condition to revocation of his driver's license under the Implied Consent Act. MVD's

2

arguments that the Implied Consent Act has no such requirement are based on a reasonable statutory interpretation, and in the absence of arguments to the contrary, are persuasive. We reverse the district court.

**BACKGROUND**

{3}     MVD held a hearing at Driver's request to contest the proposed revocation of his driver's license. The facts are not disputed.On March 20, 2015, Officer David Saiz of the New Mexico State Police stopped Driver for speeding. After conducting a DWI investigation, Officer Saiz arrested Driver for DWI and read the implied consent advisory to Driver from his issued card. Driver refused chemical testing. Driver was transported to the state police office where Officer Saiz again read the implied consent advisory to Driver, and Driver again refused. The implied consent advisory informed Driver he was required to submit to a blood or breath test, and if he refused, would receive a greater charge, and lose his driver's license for one year.

{4}     Driver moved that the proposed revocation be rescinded, arguing that he was not advised that he could arrange for an independent test as required by NMSA 1978, Section 66-8-109(B) (1993) of the Implied Consent Act. The hearing officer rejected Driver's argument on the basis that NMSA 1978, Section 66-8-111(B) (2005) in pertinent part, provides that the MVD "shall revoke" a person's driver's license for one year if "upon request, the person refused to submit to a chemical

3

test after being advised that failure to submit could result in revocation of the person's privilege to drive," and the evidence clearly established that Driver was so advised and refused. Driver "refused chemical testing after understanding what the consequences of his refusal would be." Thus, the hearing officer ruled, the absence of testimony concerning the right to an independent test was not "determinative."

{5} Driver appealed to the district court pursuant to NMSA 1978, Section 66-8-112(H) (2015) and Rule 1-074 NMRA. After briefing by the parties and oral argument, the district court reversed. The district court found that Driver "was properly advised his driving privileges may be revoked." In addition, the district court found that the Implied Consent Act also required that Driver be advised he had a right to a reasonable opportunity to arrange for an independent test of his own choosing. The district court concluded that "consistent with the intent of the Implied Consent Act, the information pertaining to independent testing may impact an arrestee in his or her decision on whether or not to submit to officer requested testing. Therefore, as a matter of law, the information pertaining to independent testing is intended by the Implied Consent Act to be part of the advisement to the arrestee." The district court concluded that there was insufficient evidence to support revoking the driver's license of Driver because Driver was not advised of his right to arrange for an independent test of his own choosing and reversed the hearing officer's decision. We granted MVD's application for a writ of certiorari.

4

# DISCUSSION

## A.     Standard of Review

{6}     We are called upon to determine whether MVD's "interpretation of the Implied Consent Act is unreasonable or unlawful." *Medrow v. State Taxation & Revenue Dep't*, 1998-NMCA-173, ¶ 6, 126 N.M. 332, 968 P.2d 1195. This requires us to engage in statutory construction of the Implied Consent Act, and our review is therefore de novo. *See State v. Chakerian*, 2018-NMSC-019, ¶ 10, ___ P.3d ___. "Our main goal when interpreting statutory language is to give effect to the Legislature's intent. To discern the Legislature's intent, the Court looks first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended. When a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Id.* (alteration, internal quotation marks, and citations omitted).

## B.     Analysis

{7}     MVD first points out that all persons operating a motor vehicle in New Mexico are deemed to have given consent, subject to the Implied Consent Act, to chemical tests of their breath or blood. NMSA 1978, § 66-8-107(A) (1993). On the other hand, if a person under arrest for a violation of the Motor Vehicle Code "refuses upon request of a law enforcement officer to submit to chemical tests"

then "none shall be administered" except pursuant to a search warrant. Section 66-8-111(A). Such a refusal is not without consequences:

> The[MVD], upon receipt of a statement signed under penalty of perjury from a law enforcement officer stating the officer's reasonable grounds to believe the arrested person had been driving a motor vehicle within this state while under the influence of intoxicating liquor or drugs and that, upon request, the person refused to submit to a chemical test after being advised that failure to submit could result in revocation of the person's privilege to drive, *shall revoke* the person's New Mexico driver's license or any nonresident operating privilege for a period of one year or until all conditions for license reinstatement are met, whichever is later.

Section 66-8-111(B) (emphasis added). Under its plain language, when a driver withdraws their implied consent to submit to chemical testing, and the conditions of Section 66-8-111(B) are present, MVD's obligation is to revoke the person's driver's license.

**{8}** The Implied Consent Act, on the other hand, affords a driver the opportunity to request a hearing before MVD to contest the revocation. Section 66-8-112(B). The hearing is limited to certain issues, the one pertinent to the case before us being "whether: (a) the person refused to submit to a test upon request of the law enforcement officer; and (b) the law enforcement officer advised that the failure to submit to a test could result in revocation of the person's privilege to drive[.]" Section 66-8-112(E)(4). The hearing officer "shall enter an order sustaining the revocation" of the person's driver's license if the hearing officer finds, in pertinent part, that "the person refused to submit to the test upon request of the law

6

enforcement officer after the law enforcement officer advised the person that the person's failure to submit to the test could result in the revocation of the person's privilege to drive[.]" Section 66-8-112(F)(4)(a). MVD argues that the hearing officer's findings demonstrated that these statutes were satisfied in all respects. Specifically, MVD argues that because Driver did not dispute the hearing officer's factual findings that he was informed his license would be revoked if he refused, and he still refused, the district court improperly disregarded the hearing officer's factual findings and legal conclusions.

{9}     Turning to Section 66-8-109(B), the provision relied on by the district court, MVD notes that it specifically states:

> The person *tested* shall be advised by the law enforcement officer of the person's right to be given an opportunity to arrange for a physician, licensed professional or practical nurse or laboratory technician or technologist who is employed by a hospital or physician of his own choosing to perform a chemical test *in addition to any test performed at the direction of a law enforcement officer*.

(Emphasis added.) MVD asserts that the Legislature deliberately used the term "tested" in the past tense. Therefore, MVD argues, "an officer must inform the person who complies and takes the officer's test about his right to the opportunity to arrange for an independent test." This follows, according to MVD, because "[a]pplying rules of grammar, the statute indicates that the [L]egislature used the past tense of a verb to express its intent that this provision applies to a person who complied with his obligation and submitted to chemical testing."

7

**{10}** MVD also points out, the statute expressly states that the independent test is "in addition to any test performed at the direction of the law enforcement officer." MVD asserts this phrase further "demonstrates the [L]egislature's intent that the purpose of the independent test is to provide a driver with his own test to challenge the one administered by the deputy." And when a driver refuses to take the test requested by the arresting officer, reliability of the test results is not an issue, so advising the driver of the right to an independent test serves no purpose.

**{11}** Finally, MVD argues, Section 66-8-112(E)(4) does not include, as an issue to be decided at the MVD hearing, whether the driver was advised of the right to an independent test. Rather, according to MVD's interpretation, "[t]he issues and findings are based upon the language of [Section] 66-8-111(B)—a person refuses to submit to chemical testing after being informed about the license revocation consequence."

**{12}** We find MVD's arguments reasonable, and in the absence of arguments to the contrary, persuasive. We conclude that the order of the district court must be reversed, and the revocation of Driver's license to drive be reinstated.

**CONCLUSION**

**{13}** The order of the district court is reversed, and the case is remanded for entry of an order consistent with this opinion.

**{14}** **IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**STEPHEN G. FRENCH, Judge**

_____

**EMIL J. KIEHNE, Judge**

9